29785. McBRIDE *v.* THE STATE.

DECIDED JANUARY 22, 1943.

*Aiken & Preston,* for plaintiff in error.

*B. H. Ramsey, solicitor,* contra.

MACINTYRE, J. The defendant was charged with a violation of Code § 26-4401: "Any person who shall knowingly and wilfully obstruct, resist, or oppose any officer of this State, or other person duly authorized, in serving or attempting to serve or execute any lawful process or order, or shall assault or beat any officer, or person duly authorized, in serving or executing any process or order aforesaid, or for having served or executed the same, shall be guilty of a misdemeanor." That view of the evidence which is most unfavorable to the accused must be taken, for every presumption and every inference is in favor of the verdict. *Vandeviere* v. *State*, 58 *Ga. App.* 18 (197 S. E. 338). The evidence showed that the officer went to the house of the defendant, Dan McBride, to execute a legal process based upon a chattel-mortgage foreclosure, and was

accompanied by Dixon, an agent of the mortgagee. The agent remained in the street in front of the house and the officer entered the house to execute the lawful process. The officer testified: "The defendant was in a back room when I got there. I talked to his wife and Dan [defendant] came into the front room where I was talking to his wife. His wife said that she had some receipts showing that the radio was paid for. I said that I didn't have anything to do with that part of it. I just wanted to do what I was supposed to do, and that was to repossess the radio. Dan McBride was in the room then. I called Mr. Dixon to come into the house and look at the receipts. About that time Dan McBride went into a room across the hall and I saw him take a rifle down from over the window. He, Dan McBride, pointed the rifle at us and said 'You can't take that radio, get out of my house, get out.' The radio was not paid for. There was a balance due on it. The contract was signed by Buster McBride who is the defendant's son, and also by Buster McBride's mother." Dixon testified: "Dan McBride did not put his hand on us. He did not threaten to shoot us. He pointed the rifle at us and told us not to take the radio and to get out of his house." The officer testified that they did not wait to see if he was going to shoot, but that they just got out of the house.

To constitute obstructing, resisting, or opposing an officer, in attempting to execute his legal process, there must be some overt act consisting of force or threats accompanied by some overt act with the ability and the apparent intent to carry such threat into effect. Mere threats alone or a mere refusal to aid the officer in executing the process, are not sufficient. 2 Cyc. Crim. L. 1782, § 1155. *Butler* v. *State,* 66 *Ga. App.* 665 (19 S. E. 2d, 177); *Raines* v. *State,* 13 *Ga. App.* 693 (79 S. E. 860); *Allen* v. *State,* 5 *Ga. App.* 237 (62 S. E. 1003). The jury was authorized to find that defendant did not merely threaten the officer, but accompanied it with an overt act, the removing of the rifle from over the window and pointing the same at the officer, and told him not to take the radio, and to get out of his house. The words were spoken under such circumstances and accompanied by such an overt act as afforded the officer reasonable grounds to believe that he could not proceed with the execution of the process without incurring evident risk of serious bodily injury. State v. Scott, 123 La. 1085 (49 So.

715, 24 L. R. A. (N. S.) 199, 17 Ann. Cas. 400). We do not think the law would make it indispensable that the officer should proceed, at the peril of his life or of serious bodily injury, with the execution of the legal process to further test the threatening words, accompanied by menaces and apparently dangerous acts of the defendant, before the defendant could be found guilty of obstructing legal process. The evidence authorized the verdict.

*Judgment affirmed. Broyles, C. J., and Gardner, J., concur.*